[Crim. No. 13864.    Second Dist., Div. One.    Apr. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT EARL LEE, Defendant and Appellant.

Green, Simke & Lasher and Allan B. Lasher for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Megan A. Wagner, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused of violating section 11530 of the Health and Safety Code (possession of marijuana). In a nonjury trial, he was found guilty of violating section 11556 of the Health and Safety Code (unlawfully being in place where narcotics are used), a lesser and included offense in the offense charged. He appeals from the judgment.

Appellant contends that there was no reasonable cause for his arrest and a search incident thereto; that the evidence does not support the judgment; and that the provisions of section 11556 of the Health and Safety Code are unconstitutional.

It was stipulated that the People's case might be submitted on the transcript of the preliminary examination, and that exhibits received at that examination might be received in evidence at the trial. Officers Johnson and Kemples testified at the examination.

On November 9, 1966, about 3:30 p.m., while Officers Johnson and Kemples were in a police car traveling easterly on Wilshire Boulevard near June Street, they saw a convertible automobile, without a front license plate, traveling westerly on Wilshire. They pursued the automobile and stopped it on June Street. Two men were in the automobile—the defendant was on the right-hand side of the front seat. As Officer John-

son approached and "leaned over" the automobile in order to question the driver about the missing license plate, he smelled a fresh "odor of marijuana smoking." Officer Johnson had had special training and experience in narcotics cases. He asked the defendant and the driver to get out of the automobile. Defendant, who was wearing sunglasses, removed them at the request of the officer. Defendant's eyes were bloodshot and watery, his pupils were dilated, his speech was thick and slurred, and he appeared to be under the influence of something. There was no odor of alcohol on his breath. The officers arrested defendant and searched the automobile. They found a partly burned marijuana cigarette on the front seat. Under a small cloth on the front floor on the right-hand side of the automobile, near the place where defendant's feet had been, they found another partly burned marijuana cigarette, which was concealed by the cloth. The officers also searched the defendant and found several packages of Zig-Zag cigarette papers of the type which commonly are used to roll marijuana cigarettes.

The cigarettes and Zig-Zag papers were received in evidence (at preliminary examination) over defendant's objection. At the trial the arrest report and a property report were also received in evidence as the People's exhibits.

Defendant did not testify.

Defendant's mother, called as a witness by defendant, testified in substance that the automobile in which defendant had been riding when he was arrested had been parked in the driveway of her house for approximately 8 months prior to November 9, 1966 (date of arrest), during which time it had not been used; the defendant, who was 20 years of age, did not have a driver's license; and once a week a group of teenage boys played musical instruments in her garage, and on those occasions they moved the automobile in and out of the garage.

Mr. O'Grady, a retired police officer, called as a witness by defendant, testified in substance that he had ten years' experience in narcotics cases and had testified many times in court as an expert in the use of narcotics; a supposition on his part would be that the odor of smoke of a burnt marijuana cigarette, in an open convertible automobile, would persist a "few minutes,"—depending on whether the butt or roach was in an ash tray; the immediate reaction to the use of marijuana is dilation of the pupils of the eyes; if there is extended use of marijuana, the eyes will become bloodshot;

marijuana odor will stay on the breath at least an hour after smoking marijuana; the effect of marijuana on speech "varies on the human factor," and slurred speech is not necessarily a symptom of the use of marijuana; and if he, as a police officer, had stopped a person who had watery and bloodshot eyes, no odor of marijuana on his breath, and slurred speech, he would form an opinion that the person possibly was under the influence of alcohol and was not "under the influence of a drug, per se narcotics."

Appellant contends that there was no reasonable cause for his arrest and the search of the automobile. He argues that the "arrest report examined in the light of the testimony of the expert witness O'Grady clearly showed that there was no reasonable or probable cause for the arrest and, therefore, the incident search was unlawful." The facts regarding the arrest, as shown in the arrest report, are substantially the same as the facts hereinabove set forth, except that there is no statement therein that the pupils of defendant's eyes were dilated or that his speech was slurred. Questions as to the credibility of the witnesses and the weight of the evidence were for the determination of the trial court.

When the officers saw the automobile being driven on the public highway without a front license plate, they had reasonable cause to stop the automobile (Veh. Code, §§ 5200-5202, 40000; see *People* v. *Sanson,* 156 Cal.App.2d 250, 253 [319 P.2d 422].) As one of the officers approached the automobile in order to ask the driver about the missing license plate, he detected a fresh odor of marijuana smoke emanating from the automobile. (See *People* v. *Layne,* 235 Cal.App.2d 188, 190, 193 [45 Cal.Rptr. 110]; *People* v. *Tisby,* 180 Cal. App.2d 574, 576 [5 Cal.Rptr. 614]; *People* v. *Clifton,* 169 Cal.App.2d 617, 619 [337 P.2d 871]; see *People* v. *Barcenas,* 251 Cal.App.2d 405, 407 [59 Cal.Rptr. 419].) When the defendant had alighted from the automobile and had removed his sunglasses, the officer noticed that the pupils of defendant's eyes were dilated (see *People* v. *Clifton, supra,* p. 619) and that his speech was slurred (see *People* v. *Layne, supra,* p. 190). After having made those observations, the officers arrested the defendant. There was reasonable cause for the arrest, and the search was incident to the arrest.

Appellant further contends that the evidence does not support the judgment. He argues that there is no evidence that defendant had knowledge that narcotics were being unlawfully smoked or used; and that there is no evidence that

defendant was in a "place" where narcotics were being smoked or used—that an automobile is not a "place" within the meaning of section 11556 of the Health and Safety Code.

Said section 11556 provides: "It is unlawful to visit or to be in any room or place where any narcotics are being unlawfully smoked or used with knowledge that such activity is occurring."

There was ample evidence from which it could be inferred that defendant knew that marijuana was in the automobile and that marijuana was being smoked therein. A fresh odor of marijuana smoke was emanating from the automobile when it stopped; two partially burned marijuana cigarettes were in the automobile; one of the cigarettes was under a cloth on the floor near the place where defendant's feet had been; and defendant exhibited symptoms of being under the influence of marijuana. Knowledge of the presence of the marijuana could properly be established by circumstantial evidence. (See *People* v. *Finn*, 232 Cal.App.2d 422, 426 [42 Cal.Rptr. 704].)

Appellant also argues, as above indicated, that he was not in a "place" where narcotics were unlawfully smoked—he asserts that an automobile is not a "room or place" within the meaning of section 11556; and that since the general word "place" follows the more specific word "room" in section 11556, then, under the rule of *ejusdem generis*, the general word (place) should be limited to spaces similar to the specific word (room).

In *Kansas City Breweries Co.* v. *Kansas City*, 96 Kan. 731 [153 P. 523], a statute provided that it was unlawful for any person to maintain any place where intoxicating liquors are manufactured, sold, bartered, or given away. The court held that a vehicle moving from one place to another while engaged in selling intoxicating liquors is a "place," and said (153 P. at p. 524): "What is a 'place' as named in the liquor nuisance statute . . . ? It is any place or thing in or out of which intoxicating liquors may be sold. It may be a railway train, moving across the state. It may be a barrel in an alley. [Citation.] It may be a wagon or any other vehicle, moved from one part of the city to another. It is not necessary that the place be a building or in any particular kind of structure. [Citation.]" (See *State* v. *Rogle*, 100 Kan. 590 [164 P. 1165].)

In *Steward* v. *State*, 75 Nev. 498 [346 P.2d 1083], a statute provided that the jury might view the place in which the offense is alleged to have been committed. The trial court per-

mitted the jury to view a truck which was identical with the truck in which the murder had been committed. The appellate court held that the view was proper and said: ''The fact that the 'place' consists of a vehicle would not circumvent the statute. [Citations.] '. . . the process of view need not be applicable merely where land is to be observed. . . .' ''

In *Commonwealth* v. *Fancy* (1965) 349 Mass. 196, 203-204 [207 N.E.2d 276], where officers searched defendants' automobile pursuant to a warrant issued under a statute which authorized warrants for searching a ''particular house or place,'' the court held that the word ''place'' included an automobile, and said: ''It is hardly likely that a legislative policy permitting searches of homes, the citadels of privacy, would not also embrace the search of automobiles.''

With reference to the doctrine of *ejusdem generis*, it is said in *People* v. *Silver*, 16 Cal.2d 714, 721 [108 P.2d 4]: ██ ''It is to be remembered that 'the doctrine of *ejusdem generis* is but a rule of construction to aid in ascertaining the meaning of the Legislature, and may be used to carry out, but not to defeat the legislative intent.' '' (See 1 Witkin, Cal. Crimes (1963) Introduction, § 15, p. 17.) The ''major consideration in interpreting a criminal statute is the legislative purpose,'' and the court ''will usually inquire into the evils which prompted its enactment and the method of elimination or control which the Legislature chose.'' (1 Witkin, Cal. Crimes, *supra*, § 11, p. 13.) ██ It is apparent that said section 11556 was enacted as an aid in eliminating or controlling traffic in narcotics, and that the word ''place,'' as used in the section, was intended to designate a location or space other than that which is ordinarily referred to as a room in a building or structure. If the word ''place,'' as used therein, were to be interpreted, under the doctrine of *ejusdem generis*, as meaning a room in a building, it is apparent that such an interpretation would tend to defeat the legislative purpose of eliminating or controlling traffic in narcotics. Appellant's asserted interpretation of the word ''place,'' as used in the section, is not sustainable.

██ Appellant also contends that section 11556 is unconstitutional in that there is no provision regarding criminal intent. Prior to the 1957 amendment of section 11556, the section was declared unconstitutional because, under the section as then worded, it was unlawful for a person to be in a room or place where narcotics are smoked or used irrespective of whether the person had knowledge that such unlawful

activity was occurring therein. (*Bonwell* v. *Justice Court,* 148 Cal.App.2d 906, 907-908 [307 P.2d 716] ; see *People* v. *Drake,* 151 Cal.App.2d 28, 49-50 [310 P.2d 997].) In 1957 the Legislature, in order to overcome the objections regarding unconstitutionality, amended the section by adding the words ''with knowledge that such activity is occurring.'' (See West's Annotated Codes, Health and Safety Code, § 11556 Historical Note, p. 312 [Deering's Health & Saf. Code Ann., § 1156, Legislative History No. 5, p. 751].) As amended, the section is not unconstitutional.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.