[Crim. No. 13933. In Bank. July 8, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE CRESSEY, SR., Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—The District Attorney of Los Angeles County jointly charged defendant Cressey and one Phillips by an amended information with possession of marijuana (Health & Saf. Code, § 11530) and with being present in an apartment where with their knowledge marijuana was being unlawfully used. (Health & Saf. Code, § 11556.) The parties submitted the matter on the transcript of the preliminary hearing and the court acquitted Phillips but found Cressey guilty of possession. Having denied his motion for a new trial, the court on September 24, 1968, pursuant to Penal Code section 1181, subdivision 6, reduced the offense to a violation of Health and Safety Code section 11556, imposed a fine and six-month jail sentence, suspended the sentence, and placed defendant on probation for two years.

For the reasons discussed below, we conclude that defendant's conviction must be affirmed. His arrest and the subsequent search rested solely upon an affidavit; the affidavit, however, set forth sufficient underlying facts for the magistrate independently to find probable cause to arrest for the offense charged. (See *Giordenello* v. *United States* (1958) 357 U.S. 480, 484 [2 L.Ed.2d 1503, 1508, 78 S.Ct. 1245]; *People* v. *Sesslin* (1968) 68 Cal.2d 418, 421 [67 Cal.Rptr. 409, 439 P.2d 321].) Furthermore, the magistrate properly indorsed defendant's arrest warrant for nighttime service, as then required by Penal Code section 840. Finally, we hold that the conviction of defendant under Health and Safety Code section 11556 does not involve a violation of his constitutional rights.

### I. *The facts*

Jesse and Isaura Cressey, a married couple, lived together in Los Angeles. The couple separated, and Mrs. Cressey filed for divorce. Mrs. Cressey charged her husband with failing to support their daughter and signed a verified complaint at the Failure to Provide Section of the Los

Angeles District Attorney's office.[1] The only accompanying document in the record before this court is identified by the caption "Defendant's Case History—Failure to Provide."[2] This document is unsigned and undated; it contains a description of the defendant, defendant's present and previous addresses, the name of defendant's present and previous employer, occupational information regarding defendant, vehicle and driver's license data, and two unexplained references to dates subsequent to the date of the complaint.

A judge of the municipal court issued a warrant for the arrest of defendant for nonsupport.[3] (Pen. Code, § 270; a misdemeanor.) On the face of the warrant appeared the following stamp: "This warrant may be served in the night time." On March 1, 1968, a Los Angeles police officer proceeded at night to an apartment where he believed defendant to be residing.

---

[1]The complaint reads as follows: "Personally appeared before me, the undersigned, who, first being duly sworn, complains and says: That on or about July 31, 1967, and continuously for a period of twelve months immediately prior thereto, at and in Los Angeles City, in the County of Los Angeles, State of California, a misdemeanor, to-wit: violation of Section 270 of the Penal Code of the State of California was committed by Jesse Cressey (whose true name to affiant is unknown), he, being then and there the father of a minor child, to-wit: Jema, dob 4/7/65 did at the time and place last aforesaid, wilfully and unlawfully and without lawful excuse omit to furnish necessary food, clothing, shelter, medical attendance and other remedial care for said child. All of which is contrary to the law in such cases made and provided, and against the peace and dignity of the People of the State of California. Said Complainant therefore prays that a warrant may be issued for the arrest of said Defendant that he may be dealt with according to law. . . . [signed] Isaura Cressey."

[2]District Attorney's Investigator Joel C. Blakely testified that he submitted three documents identified only as green, white, and pink sheets. Evidently the complaint was pink and the sheet entitled "Defendant's Case History—Failure to Provide" was green. The arrest warrant itself may have been the white sheet. The prosecution submitted into evidence copies of only the complaint, the arrest warrant, and the "Defendant's Case History—Failure to Provide." We may consider only these three documents presented to the magistrate in considering the validity of the defendant's arrest warrant. (*Spinelli* v. *United States* (1969) 393 U.S. 410, 413, fn. 3 [21 L.Ed.2d 637, 642, 89 S.Ct. 584]; *Aguilar* v. *Texas* (1964) 378 U.S. 108, 109, fn. 1 [12 L.Ed.2d 723, 725, 84 S.Ct. 1509].)

[3]The warrant reads: "The People of the State of California, to any peace officer of this State:

"Complaint on oath having this day been laid before me that the crime of Violation of Section 270 Penal Code, a misdemeanor, has been committed, and accusing Jesse Cressey thereof; you are therefore commanded forthwith to arrest the above named defendant and bring Him before the Judge in Division 59 in the Municipal Court of Los Angeles Judicial District in the County of Los Angeles; or in case of his absence or inability to act, before the nearest and most accessible magistrate in Los Angeles County. The defendant is to be admitted to bail in the sum of 500 dollars. Dated Aug 10 1967 at 9 A.M.

"THIS WARRANT MAY BE SERVED IN THE NIGHT TIME /s/ HAROLD J. ACKERMAN Judge of Municipal Court of Los Angeles Judicial District, County of Los Angeles, State of California

"Penalty assessment to be deposited $ 50"

About 9:55 p.m. the officer orally verified that an arrest warrant for defendant remained on file and was active, and that it permitted nighttime service. Although the officer possessed no warrant for defendant's arrest, he believed that there were two warrants on file: one for Penal Code section 270 nonsupport and the other for an unspecified traffic offense. The prosecution at no time in these proceedings produced the traffic warrant and only the misdemeanor nonsupport warrant remains at issue in this case. (See fn. 2, *supra.*)

The officer arrived at the apartment about 10 p.m. and knocked at the door. The defendant answered the door by opening a 5- by 7-inch screened viewport located in the center of the door. The officer inquired, "Jesse Cressey?" and defendant responded, "Yes." Properly explaining his purpose, the officer said, "I have two warrants for your arrest charging you with failure to provide, and a traffic warrant. Open the door. You're under arrest." The defendant answered, "I'm not going to open the door. You don't have any failure to provide warrant for me. I sent my ex-wife one hundred dollars last week." Although the officer did not at that time possess the warrant, he informed the defendant again that the police had such a warrant and ordered defendant to submit to arrest and open the door or he would force entry.[4] Defendant declared: "Go ahead because I'm not going to open the door. If you break it down, I'll sue the City."

The officer immediately broke into the apartment and viewed defendant Cressey standing close to the door and another man, Phillips, sitting on a couch facing the door and 10 or 15 feet away. In front of Phillips stood a low coffee table, and the officer saw a blue steel revolver within reach of Phillips. Proceeding immediately into the apartment past defendant Cressey, who remained by the door, the officer picked the weapon up off the table and also noticed on the table a smoldering pipe and an open envelope containing a green, leafy substance. The officer had previously made approximately 300 arrests for marijuana possession and at that moment identified the substance in the envelope and the pipe as marijuana. The officer placed both Cressey and Phillips under arrest for possession of marijuana.

The officer discovered a small plastic bag of marijuana, a cigarette case containing one partially burned marijuana cigarette, some scattered mari-

---

[4]Penal Code section 842 specifically provides that: "An arrest by a peace officer acting under a warrant is lawful even though the officer does not have the warrant in his possession at the time of the arrest, but if the person arrested so requests it, the warrant shall be shown to him as soon as practicable." Hence, the police officer was not required to possess the warrant or to show the warrant to the accused at the time of his demand for entry unless the officer actually possessed the warrant at that time. (See Pen. Code, §§ 842, 1531; *People* v. *Sanford* (1968) 265 Cal.App.2d 960, 964 [71 Cal.Rptr. 790].)

juana debris and seeds, and two packages of paper for hand-rolling cigarettes in the same room of defendant's apartment. By stipulation the parties agreed that the officer found approximately 8½ grams, or less than 3/10 of an ounce, of marijuana in the apartment.[5]

On May 27, 1968, somewhat more than a month after the filing of this court's decision in *People* v. *Sesslin, supra* (1968) 68 Cal.2d 418, the marijuana possession case of People v. Cressey and Phillips came to preliminary hearing and the parties argued whether the then recently filed *Sesslin* decision would render the arrest warrant void in this case because the complaint did not "allege underlying facts upon which the magistrate can independently find probable cause to arrest the accused." (68 Cal.2d at p. 421.) The People indicated that the only cause for arrest lay in the warrant.[6] The trial court denied the defendants' motion to exclude any testimony or evidence found as a result of issuance of the warrant, but permitted a continuing objection to all such evidence. As related above, the trial court eventually found defendant Cressey guilty of being present in an apartment where with his knowledge marijuana was being unlawfully used. (Health & Saf. Code, § 11556.) He appeals from that conviction.

## II. *The arrest warrant was properly issued*

The Fourth Amendment of the United States Constitution insures that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,* and particularly describing the place to be searched, and the persons or things to be seized." (Italics added.) The due process clause of the Fourteenth Amendment wholly incorporates the Fourth Amendment and thus forbids state intrusions upon the right to privacy. (See *Aguilar* v.

---

[5]As to the usable quantity of marijuana discovered in the apartment, see *People* v. *Leal* (1966) 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665].

[6]The Attorney General does not seek to justify the arrest upon the ground that the officer was investigating defendant's refusal to open his door. Although the occupant may use neither force nor a weapon to resist arrest, Penal Code section 1531 does not require the occupant to open his door to admit the officer; indeed, the act of opening the door might well be construed as a consent to any subsequent search. (See *People* v. *Rosales* (1968) 68 Cal.2d 299, 301-303 [66 Cal.Rptr. 1, 437 P.2d 489].) As we observed in *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 68 [27 Cal.Rptr. 889, 378 P.2d 113], "There are many reasons other than guilt of a felony why an occupant of an apartment may not wish himself or others present exposed to the immediate view of a stranger, even if the stranger is a police officer. If refusal of permission to enter could convert mere suspicion of crime into probable cause to arrest the occupant and search his home, such suspicion alone would become the test of the right to enter, and the right to be free from unreasonable police intrusions would be vitiated by its mere assertion." (Cf. *See* v. *City of Seattle* (1967) 387 U.S. 541, 546 [18 L.Ed.2d 943, 948, 87 S.Ct. 1737]; *People* v. *Curtis* (1969) 70 Cal.2d

*Texas, supra,* 378 U.S. 108, 110 [12 L.Ed.2d 723, 726]; *Ker v. California* (1963) 374 U.S. 23, 33 [10 L.Ed.2d 726, 737, 83 S.Ct. 1623]; *Mapp v. Ohio* (1961) 367 U.S. 643, 656-657 [6 L.Ed.2d 1081, 1090-1091, 81 S.Ct. 1684].) State constitutional and statutory provisions similarly protect the right to privacy. (Cal. Const., art. I, § 19; Pen. Code, § 813.) In interpreting the Fourth Amendment the United States Supreme Court has held that neither a search nor an arrest warrant may issue without probable cause based upon oath or affirmation (*Ex parte Burford* (1806) 7 U.S. (3 Cranch) 448, 451 [2 L.Ed. 495, 496]). In recent years the Supreme Court has encouraged police officers to seek warrants and established minimum standards for permitting "a neutral and detached magistrate" to determine whether the "probable cause" required to support a warrant exists. (*Johnson v. United States* (1948) 333 U.S. 10, 14 [92 L.Ed. 436, 440, 68 S.Ct. 367].)

 In order that an arrest warrant satisfy the Fourth Amendment's requirement of "probable cause" the affidavit must recite competent facts that would lead a man of ordinary caution and prudence conscientiously to entertain a strong suspicion of the guilt of the accused. (*Skelton v. Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; see *Beck v. Ohio* (1964) 379 U.S. 89, 96 [13 L.Ed.2d 142, 147-148, 85 S.Ct. 223].)[7] The United States Supreme Court has repeatedly reiterated its steadfast insistence that the record indicate specific and articulable facts to justify any intrusion upon an individual's privacy. (See *Terry v. Ohio* (1968) 392 U.S. 1, 21 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868], and cases cited therein.)

347, 357 [74 Cal.Rptr. 713, 450 P.2d 33].) Refusal to open the door is obviously not a public offense. (Pen. Code, § § 69, 148.)

Nor did the Attorney General seek to justify defendant's misdemeanor nonsupport arrest on the basis of probable cause independent of the arrest warrant. (Cf. *People v. Chimel* (1968) 68 Cal.2d 436, 440-442 [67 Cal.Rptr. 421, 439 P.2d 333], revd. on other grounds, *Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) Penal Code section 836 permits a misdemeanor arrest by a peace officer only if the offense is committed in his presence or if he possesses a valid arrest warrant. In addition, unlike *Chimel,* the arresting officer had not performed an extensive investigation and did not possess personal knowledge which constituted probable cause to arrest for a felony, independent of the arrest warrant.

[7]In the present case the complainant wife did not appear before the magistrate who issued the warrant. Hence, the magistrate could not judge her credibility for himself by taking the opportunity to question her concerning the underlying facts and circumstances of the charge and her personal knowledge of those facts. (Cf. *Skelton v. Superior Court, supra,* 1 Cal.3d 144.) In *Skelton* the affiant was an accomplice who possessed personal knowledge of the matters related and who stated those matters in great detail so that the magistrate could himself resolve the issue of probable cause. By requiring the affiant to appear, the magistrate could judge the credibility of the affidavit's information.

In *Giordenello* v. *United States, supra,* 357 U.S. 480, 486 [2 L.Ed.2d 1503, 1509], the Supreme Court held that a complaint which merely stated the affiant's conclusion could not support a valid arrest warrant. The court reasoned that the magistrate who is authorized to issue the warrant must judge for himself the persuasiveness of the facts upon which the complaint relies. In *Aguilar* v. *Texas, supra,* 378 U.S. 108, 112-113, 116 [12 L.Ed.2d 723, 727-728, 729], the court clearly indicated that *Giordenello* enunciated constitutional standards under the Fourth Amendment for the issuance of an arrest warrant. (See *Beck* v. *Ohio, supra,* 379 U.S. 89, 96 fn. 5 [13 L.Ed.2d 142, 148].)

In *People* v. *Sesslin, supra,* 68 Cal.2d 418, 423, this court followed the *Giordenello-Aguilar* standard. And in *People* v. *Groves* (1969) 71 Cal. 2d 1196, 1198-1199 [80 Cal.Rptr. 745, 458 P.2d 985], this court unanimously held that *People* v. *Sesslin, supra,* 68 Cal.2d 418, merely constituted the first case in which we were called upon to follow the United States Supreme Court's interpretation of the Fourth Amendment as enunciated prior to 1966. Thus *Sesslin* applies to the arrest in the present case. (*Id.* at pp. 1198-1199; see *Desist* v. *United States* (1969) 394 U.S. 244, 263-264 [22 L.Ed.2d 248, 263-264, 89 S.Ct. 1030] (dissent of Harlan, J.); *Spinelli* v. *United States, supra,* 393 U.S. 410, 419 [21 L.Ed.2d 637, 645].)[8]

In determining the sufficiency of an affidavit to support an arrest warrant we face very different considerations than in considering the notice requirements of pleadings in criminal cases. Since Penal Code sections 950, 951, and 952 are designed only to provide adequate notice to the accused of the charges against him, they permit a pronounced degree of latitude in the form of the pleadings. But in considering the sufficiency of an affidavit to support a warrant for arrest, the Fourth Amendment requires a more de-

---

[8]In *People* v. *Groves, supra,* 71 Cal.2d 1196, 1198, 1199, fn. 1, we pointed out that *Sesslin* relied upon five decisions of the United States Supreme Court. (*Jaben* v. *United States* (1965) 381 U.S. 214 [14 L.Ed.2d 345, 85 S.Ct. 1365]; *Barnes* v. *Texas* (1965) 380 U.S. 253 [13 L.Ed.2d 818, 85 S.Ct. 942]; *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]; *Giordenello* v. *United States* (1958) 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245].) We observed in *Groves* that "the arrest in this case occurred after the foregoing decisions of the United States Supreme Court, and it is therefore unnecessary to determine whether any of those decisions should be given prospective effect only." (*People* v. *Groves, supra,* 71 Cal.2d 1196, 1199, fn. 1.) That observation holds equally true for the present case.

tached, neutral scrutiny by a magistrate; he must evaluate the specific factual circumstances that might warrant a particular arrest.[9] In striking the balance between the individual's right to privacy and the governmental interest that allegedly justifies official intrusion, we must be able to point to articulable facts that reasonably justify an intrusion upon an individual's privacy. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 21 [20 L.Ed.2d 889, 905-906]; *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 534-537 [18 L.Ed.2d 930, 938-940, 87 S.Ct. 1727].)

■ The complaint in the present case contained sufficient facts for a magistrate to satisfy himself that probable cause supported the arrest of defendant for nonsupport of his daughter. The verified complaint alleges that defendant, Jesse Cressey, is the father of a minor child, named Jema, and that he had failed to support his child for the year prior to July 31, 1967. The affidavit contained the signature of Isaura Cressey. Defendant's counsel at oral argument could not suggest what additional specific facts would have been useful to the magistrate in determining the existence of probable cause to arrest for nonsupport. Mrs. Cressey need not allege that her husband was able to pay the child's support because inability to pay would constitute a defense to the charge. (See *People* v. *Caseri* (1933) 129 Cal.App. 88, 92 [18 P.2d 389].)

Although the complaint in this case did not contain a specific allegation that the affiant possessed personal knowledge of the facts related by the complaint, the magistrate in this criminal nonsupport situation could properly have inferred from the surnames that Isaura Cressey was the mother of the child and the wife of Jesse Cressey. (Cf. *People* v. *Hamilton* (1969) 71 Cal.2d 176, 181-182 [77 Cal.Rptr. 785, 454 P.2d 681].)

This case is distinguishable from *Giordenello* v. *United States, supra,* 357 U.S. 480, 484-486 [2 L.Ed.2d 1503, 1508-1510]. *Giordenello* condemned an arrest based upon an affidavit containing the completely conclusory language of 21 U.S.C. section 174. Our prior cases have held that the warrant cannot be issued upon conclusiory language that parrots the words of the statute, and here, indeed, the complaint does contain some language drawn from Penal Code section 270.[10] Nevertheless, the com-

---

[9]The document which accompanied the complaint entitled: "Defendant's Case History—Failure to Provide," lacks any oath or affirmation as specifically required by the Fourth Amendment, lacks a date, and lacks any statement of the source of the information that it contains. Hence, the magistrate could not have relied upon this accompanying document in determining probable cause to arrest.

[10]Penal Code section 270 provides in pertinent part: "A father of either a legitimate or illegitimate minor child who wilfully omits without lawful excuse to furnish necessary clothing, food, shelter or medical attendance or other remedial care for his child

plaint provides sufficient information from which the magistrate can independently determine whether there exists probable cause for an arrest. The complaint charges that Mr. Cressey failed "to furnish necessary food, clothing, shelter, medical attendance and other remedial care for" his child. What more factual and descriptive statement of the offense could Mrs. Cressy compose? Certainly we could not ask her to peruse Roget's Thesaurus to find suitable synonyms for the fully descriptive language of Penal Code section 270. We must agree with the Attorney General's statement at oral argument that "the kind of information required by Penal Code 270 is quite distinct from any other provision of the Penal Code" for *Giordenello* purposes.[11]

We conclude that the magistrate possessed sufficient information upon which he could independently find probable cause to arrest defendant for a violation of Penal Code section 270.

### III. *The misdemeanor arrest warrant was properly served at night*

At the time of the arrest in this case Penal Code section 840 provided that: "If the offense charged is a felony, the arrest may be made on any day, and at any time of the day or night. *If it is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate, indorsed upon the warrant,* except when the offense is committed in the presence of the arresting officer." (Italics added.) (Stats. 1905, ch. 530, § 1, p. 693.)[12]

---

is guilty of a misdemeanor and punishable by a fine not exceeding one thousand dollars or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment."

[11]See *Jaben* v. *United States* (1965) 381 U.S. 214, 221-224 [14 L.Ed.2d 345, 351-353, 85 S.Ct. 1365]; *Jones* v. *United States* (1960) 362 U.S. 257, 267-268, fn. 2 [4 L.Ed.2d 697, 706-707, 80 S.Ct. 725]; *People* v. *Benjamin* (1969) 71 Cal.2d 296, 300-303 [78 Cal.Rptr. 510, 455 P.2d 438]; cf. *Chimel* v. *California, supra,* 395 U.S. 752, 754, fn. 1 [23 L.Ed.2d 685, 688]; *Spinelli* v. *United States, supra,* 393 U.S. 410, 420-422 [21 L.Ed.2d 637, 646-647]; *Barnes* v. *Texas* (1965) 380 U.S. 253 [13 L.Ed.2d 818, 85 S.Ct. 942] [*Barnes* v. *State* (Tex.Crim. 1965) 390 S.W.2d 266, 269-270]; *Aguilar* v. *Texas, supra,* 378 U.S. 108, 109 [12 L.Ed.2d 723, 725]; *Nathanson* v. *United States* (1933) 290 U.S. 41, 44-45 [78 L.Ed. 159, 160-161, 54 S.Ct. 11]; *People* v. *Scoma* (1969) 71 Cal.2d 332, 334-335, 338-339 [78 Cal.Rptr. 491, 455 P.2d 419]; *People* v. *Hamilton, supra,* 71 Cal.2d 176, 179-181; *People* v. *Sesslin, supra,* 68 Cal.2d 418, 421, fn. 1.

[12]Penal Code section 840 has served to protect the privacy of California citizens since 1872. (Stats. 1872 (Pen. Code), tit. III, ch. V, § 840, p. 195.) In 1905 the Legislature added the words: "except when the offense is committed in the presence of the arresting officer." (Stats. 1905, ch. 530, § 1, p. 693.) Finally, in 1969, the Legislature completely revised the section. (See fn. 15, *infra.*) References hereinafter to Penal Code section 840 or section 840, without mention of any code, are to the section quoted above in the text, unless otherwise noted.

The distinction between day and night service of an arrest warrant that is drawn by this statute derives considerable support from legal doctrine and experience.

Statutes and cases have long protected an individual's right to the security and privacy of his home, particularly during night hours. (E.g., Pen. Code, § 460; see *People* v. *Griffin* (1862) 19 Cal. 578; *People* v. *Mendoza* (1911) 17 Cal.App. 157, 159 [118 P. 964] (burglary at night).) An individual may use reasonable force to protect his home from night prowlers. (See Pen. Code, §§ 692-694; Perkins, Criminal Law (2d ed. 1969) 1022-1025.) In the context of unannounced instrusions by the police at night, this court has recognized the particular danger of violent confrontation. (See *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 319, fn. 5, 320, fn. 6, 322 [82 Cal.Rptr. 348, 461 P.2d 628]; *People* v. *Bradley* (1969) 1 Cal.3d 80, 87 [81 Cal.Rptr. 457, 460 P.2d 129]; *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 295 [78 Cal.Rptr. 504, 455 P.2d 432].) Those who framed the Fourth Amendment's prohibition against "unreasonable searches and seizures" were extremely sensitive about the "midnight knock on the door." (See *Frank* v. *Maryland* (1959) 359 U.S. 360, 366 [3 L.Ed.2d 877, 882, 79 S.Ct. 804]; *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 267 [57 Cal.Rptr. 623, 425 P.2d 223]; cf. *Camara* v. *Municipal Court, supra,* 387 U.S. 523.)

In 1963 the Legislature took notice of these factors and provided in Penal Code section 818 that persons arrested for misdemeanors under the Vehicle Code or local traffic ordinances between sunset and sunrise need not enter physical custody, but may simply substitute a promise to appear.[13] Penal Code section 1533 has since 1961 stated that only upon a showing of good cause may the magistrate direct service of a search warrant at night.[14] Finally, in 1969 the Legislature amended Penal Code section 840 by inserting language which clearly requires the showing of good cause

---

[13]"In any case in which, between sunset and sunrise, a peace officer serves upon a person, at his home, apartment, hotel room, or other place of permanent or temporary abode, a warrant of arrest for a misdemeanor offense under the Vehicle Code or under any local ordinance relating to stopping, standing, parking, or operation of a motor vehicle and where no written promise to appear has been filed and the warrant states on its face that a citation may be used in lieu of physical arrest, the peace officer may, instead of taking the person before a magistrate, prepare a notice to appear and release the person on his promise to appear, as prescribed by Sections 853.6 through 853.8 of the Penal Code. . . ." (Stats. 1963, ch. 1529, § 1, pp. 3115-3116.)

[14]"On a showing of good cause therefor, the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night; in the absence of such a direction, the warrant may be served only in the daytime." (Stats. 1961, ch. 1569, § 1, p. 3395.)

before a misdemeanor arrest warrant may be served in the hours betwen 10 p.m. and 7 a.m.[15]

■ On the date of this arrest Penal Code section 840 required only that the magistrate exercise his discretion in deciding whether to direct that a misdemeanor arrest warrant may be served in the nighttime. The magistrate determined that the arrest warrant in the present case could be served at night and properly indorsed the warrant for nighttime service. Not until 1969 did the Legislature amend Penal Code section 840 to require that the magistrate possess good cause in order to permit nighttime service of a misdemeanor arrest warrant. Obviously, the mere fact that defendant had committed a misdemeanor would not in itself constitute sufficient "good cause" under the present provision. But the 1969 amendment does not apply to an arrest occurring in 1968. Hence, the nighttime service of the misdemeanor arrest warrant in the present case is not subject to attack.

IV. *Health and Safety Code section 11556 could constitutionally apply to this case*

We do not accept defendant's contention that Health and Safety Code section 11556 constitutes an unconstitutional infringement upon an individual's right of association or violation of due process in that it purports to punish mere presence without participation in criminal conduct.

Health and Saftey Code section 11556 provides that: "It is unlawful to visit or to be in any room or place where any narcotics are being unlawfully smoked or used with knowledge that such activity is occurring." The words "with knowledge that such activity is occurring" (Stats. 1957, ch. 2157, § 1, p. 3814) were added by the Legislature in 1957 after two Court of Appeal decisions had held the previous provision unconstitutional. (*People v. Drake* (1957) 151 Cal.App.2d 28, 49-50 [310 P.2d 997] (petition for hearing denied July 10, 1957); *Bonwell* v. *Justice Court* (1957) 148 Cal. App.2d 906, 907-908 [307 P.2d 716] (petition for hearing denied May 1, 1957).) In *Bonwell* the court observed that the government cannot constitutionally forbid individuals from entering a place where narcotics are being used if this provision would "prohibit, under penalties, the citizens or inhabitants from entering such a place, innocently, not knowing its char-

---

[15]"An arrest for the commission of a felony may be made on any day and at any time of the day or night. An arrest for the commission of a misdemeanor or an infraction cannot be made between the hours of 10 o'clock p.m. of any day and 7 o'clock a.m. of the succeeding day, unless: (1) The arrest is made without a warrant pursuant to Section 836 or 837. (2) The arrest is made in a public place. (3) The arrest is made when the person is in custody pursuant to another lawful arrest. (4) The arrest is made pursuant to a warrant which, for good cause shown, directs that it may be served at any time of the day or night." (Stats. 1969, ch. 528, § 1, p. 1143.)

acter, or for any lawful purpose, and without reference to its object. . . ." ' (*Id.* at p. 907.)

In *People* v. *Brim* (1968) 257 Cal.App.2d 839, 842 [65 Cal.Rptr. 265], the Court of Appeal upheld the constitutionality of section 11556 as now constituted on the ground that on "Brim's facts, the statute is constitutionally clear. A person of common intelligence would understand section 11556 by its plain meaning is designed for a person like Brim who knowingly, wilfully and intentionally involves himself with unlawful marijuana smoking or using." In *Brim* the record showed ample testimony that defendant actually possessed marijuana, had been seen smoking marijuana during a "marijuana party" in his own apartment, and had said as the police officers approached, "Here they come now, they have seen us." Defendant's apartment was strewn with cigarette papers, marijuana cigarettes, butts, debris, and stems. Similarly, in *People* v. *Lee* (1968) 260 Cal.App.2d 836 [67 Cal.Rptr. 709], another Court of Appeal upheld the constitutionality of section 11556 in a case in which the record contained enough evidence to indicate defendant's possession of marijuana in his family's automobile. Defendant exhibited symptoms of being under the influence of marijuana, the car contained the fresh odor of marijuana smoke, and two partially burned marijuana cigarettes lay within defendant's reach.

The defendant here contends that if his mere presence at a locality where marijuana was in use would constitute sufficient evidence to infer his knowledge of its use on the premises, the amended Health and Safety Code section 11556 would suffer from the same constitutional infirmity as its predecessor. (See *In re Ah Jow* (Cir.Ct.Cal. 1886) 29 F. 181, 182; *Bonwell* v. *Justice Court, supra,* 148 Cal.App.2d 906, 907-908; cf. *In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305].)

We recognize that a literal reading of Health and Safety Code section 11556 could proscribe some kinds of conduct which cannot constitutionally be considered criminal. If one purchases a ticket and enters a motion picture theater where one has every right to remain, and midway through the film one views a person in the theater whom one knows to be smoking marijuana, must one (a) leave immediately for fear of prosecution under section 11556, or (b) force the smoker to stop using the narcotic? An individual might find himself in situations, such as at a party, theater, or dance hall, or in a hotel lobby, bus, apartment, or taxi, or even in a private automobile, where he had no relation to the acts of others who might be disposed to use marijuana. As this court has held: "If the defendant 'did not act to aid, assist, or abet' the perpetration of the crime, he is guilty of no violation of law from the mere fact that he was present . . ." and knew of its commission. (*People* v. *Woodward* (1873) 45 Cal. 293, 294 (defendant admitted he had seen offense but had not acted to prevent it).)

Yet in one's own residence or automobile one may have the responsibility to prevent the use of the narcotic for illegal purposes in that one has some control over the premises or vehicle. ■ In the *Brim* and *Lee* cases, and in the present case, the record showed that the defendant controlled the place in which the marijuana was being used; in fact, the trial court found that defendant here had possession of marijuana in his apartment.[16] Thus, section 11556 could constitutionally apply to these three cases. (See *People* v. *Redrick* (1961) 55 Cal.2d 282, 288-289 [10 Cal.Rptr. 823, 359 P.2d 255].)

Defendant has never at any time before this court contended that the record lacked sufficient evidence to support the conviction. We must, of course, view the evidence in a light most favorable to respondent, and in support of the judgment presume the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) Section 11566, as applied here, is without doubt constitutional.

The judgment is affirmed.

Burke, Acting C.J., McComb, J., Peters, J., Mosk, J., Sullivan, J., and Ford, J.,* concurred.

---

[16]In *People* v. *Wilson* (1969) 271 Cal.App.2d 60 [76 Cal.Rptr. 195], the defendant was charged with possession of marijuana (Health & Saf. Code, § 11530) and found guilty. On motion for new trial the trial court reduced the offense to presence in a place where narcotics are used (Health & Saf. Code, § 11556). The Court of Appeal reversed, holding that section 11556 is not a lesser included offense in section 11530, and that the trial court lacked jurisdiction to so reduce the offense.

The present case differs from *Wilson* in two significant respects: (1) here defendant was charged with a violation of section 11556, which charge remained pending at the time of the new trial motion; (2) the evidence shows defendant's guilt of violating section 11556. Thus, although the trial court could not reduce the offense on the theory that section 11556 was a lesser included offense, it could reduce the offense on the ground that the evidence showed defendant was not guilty of the charge of violating section 11530, but guilty of the charge of violating section 11556.

*Assigned by the Acting Chairman of the Judicial Council.