*[756] RICHARDSON, J.,
specially concurring.
While I agree the conviction must be reversed, I disagree with the reasoning of the lead opinion. I conclude that the statute, insofar as it prohibits remaining in a place which is used for the unlawful keeping or sale of narcotic or dangerous drugs, is unconstitutional.
The lead opinion, without finding the statute to be ambiguous or unclear, resorts to extrinsic indicators of legislative intent to find the meaning of the words used.[1] I do not think the statute is susceptible to the construction postulated in the lead opinion.
The legislature repealed ORS 474.130 in its entirety. Thus there is no longer a statute prohibiting the existence of a nuisance as previously described in ORS 474.130(1). This court now, however, finds the nuisance provision has survived in ORS 167.222. What is now required is that the state prove a nuisance exists and that the defendant remained at the location of the nuisance knowing the character of the place. This is a fair import of the lead opinion’s use of ORS 474.130 in defining "a place” and the statement that "ORS 167.222 prohibits knowingly remaining in a place where a principal or substantial purpose is the commercial sale or use of illegal drugs.” (31 Or App 755.) This seems to me to create a legal quagmire from *[757] which we will be continually extricating ourselves in future cases.
For example, would a dwelling house, whose principal or substantial purpose is as a residence, be considered "a place” under the statute if also used for the sale of narcotics on more than one occasion. Multiple sales may support an inference that one use of the dwelling is illegal drug activity. The opinion does not state how the priorities of use are to be allocated.
Would the definition of a place include "[a]ny store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever,” (ORS 474.130) where commercial sales or use of illicit drugs are carried on on more than one occasion? If so, there may be a store, a tavern, or a taxicab, the principal or substantial purpose of which is the sale of legal merchandise or commercial transportation, but where frequent sales of illegal drugs also occur. A fishing vessel where one of the employes continually stores or sells narcotics or dangerous drugs would perhaps fall under the definition of "a place” even though its primary purpose is catching fish. The imagination is the only limitation on finding examples of places where there are several activities carried on including illegal drug sale and use.
In 1974 the legislature amended ORS 167.222 by adding subsection (3):
"Notwithstanding subsection (2) of this section, if the conviction is for knowingly maintaining, frequenting or remaining at a place where less than one avoirdupois ounce of marijuana is found at the time of an arrest under this section, criminal drug promotion is a violation punishable by a fine of not more than $100.”
Whether a person remaining is guilty of a Class A misdemeanor or a violation depends not on the character of the place but upon the amount of marijuana found at the time of the arrest. If the evil sought to be prevented by ORS 167.222 is the promotion of the *[758] "opium den” it would be inconsistent to have the punishment depend on the character and amount of drugs found at a particular time. The "opium den” characteristic must, of necessity, be established by more than one sale or use. If, for example, the evidence established the place was continually used for heroin sales or storage and this was known to the person remaining it would appear the substance of the charge is remaining in the "heroin den.” If it were additionally proved that at the time of the arrest no heroin was found but only less than an ounce of marijuana, the charge is merely a violation. The punishment would not then reflect remaining in the "heroin den” but remaining in a place where less than an ounce of marijuana was found. If the legislature intended to prohibit remaining in a "heroin den” in order to abate this type of nuisance it would be inconsistent to allocate punishment on the basis of the drugs found at the time of arrest. I doubt that the legislature intended this result.
The interpretation given ORS 167.222 in the lead opinion is not warranted by the wording of the statute. I would construe the statute to mean exactly what it says. A person is guilty of criminal drug promotion if he knowingly remains at a place "[wjhich is used for the unlawful keeping or sale of narcotic or dangerous drugs.” The wording of the statute would include a single isolated sale or keeping of illegal drugs. The statute, as construed in the lead opinion would now read: which is primarily or substantially used for the sale or keeping of narcotic or dangerous drugs. I agree it is the obligation of courts to construe acts of the legislature in a constitutional manner if at all possible. Courts, however, are not free to amend a statute under the guise of judicial interpretation by adding additional elements or wrenching the meaning of words to make them sound constitutional.
The legislative purpose of this statute can be gleaned from its general tenor which is to prevent *[759] criminal drug promotion by removing the opportunities for drug use, keeping and sale. Additionally, it seeks to remove social encouragement and sanction of unlawful drug activities by prohibiting remaining where such activity is being carried on. This court now places an additional burden in the statute by requiring proof a drug nuisance or "opium den” exists before it can be abated by this method.
My construction of the statute leads to my conclusion it is overbroad. If by prohibiting remaining in a place used for unlawful drug activity the purpose is to discourage such activity, the statute sweeps too broadly. On its face the statute has three requirements for criminal responsibility. A person need only (1) remain in a place, (2) where drugs are unlawfully kept or sold, and (3) with knowledge such activity is occurring. An individual whose conduct satisfies these three requirements is by that fact guilty without any proof he intended to encourage, sanction or acquiesce in the unlawful drug activity. It is evident the statute is broad enough to encompass behavior which everyone would consider to be innocent. Persons may find themselves in situations such as parties, hotels, public gatherings, at private residences, in private automobiles or in their own homes where they discover some individuals are engaged in illegal drug activity. Under the statute, criminal liability would be imposed despite the fact they had no involvement in the conduct other than being present.
The imposition of criminal liability under these circumstances is not consistent with the purposes of the criminal code expressed in ORS 161.025(l)(d):
"To define the act or omission and the accompanying mental state that constitute each offense and limit the condemnation of conduct as criminal when it is without fault.”
Four other jurisdictions have wrestled with the problem of the constitutionality of similar statutory *[760] language. Three have rejected a constitutional challenge and one has declared a similar statute unconstitutionally overbroad.
In People v. Cressey, 2 Cal 3rd 836, 87 Cal Rptr 699, 471 P2d 19 (1970), the court upheld a statute which made it unlawful "* * * to visit or to be in any room or place where narcotics are being unlawfully smoked or used with knowledge that such activity is occurring.” Cal Health & Safety Code, § 11556. In sustaining the constitutionality of the statute the California Supreme Court stated:
"* * * 'If the defendant "did not act to aid, assist, or abet” the perpetration of the crime, he is guilty of no violation of law from the mere fact that he was present * * *’ and knew of its commission.* * *” 87 Cal Rptr at 708.
The court went on to note that Cressey controlled the premises where the marijuana was being used and did nothing to prevent the activity. The court held the statute as applied to Cressey was constitutional. The court thus added a requirement not discernible from a literal reading of the statute, i.e., that the defendant be in control of the premises or aid and abet the illegal drug activity.
The Cressey decision has come under criticism by the California Court of Appeal.[2] In Re Elisabeth H, 20 Cal App 3d 323, 97 Cal Rptr 565 (1971).
"Thus it appears clear to us that before one constitutionally can be convicted of violating Health and Safety Code section 11556, the Cresseyca.se requires something more than mere voluntary presence and knowledge of the activity, although the court did not mark out the boundaries of the additional element or elements that may be required. They remain vague and obscure.
* * * *
«* * * Hopefully, we soon will be rescued from this legal quagmire * * *.” 20 Cal App 3d at 329.
*[761] Rescue came in the form of a legislative repeal of the statute in 1972.
A Jacksonville, Florida ordinance was reviewed in Jolley v. City of Jacksonville, 281 So2d 901 (Fla App 1973). The ordinance punished " '[v]isiting or being present in any room, vehicle, or other place where [narcotic drugs are being used] with knowledge that such activity is occurring.’ ” Citing People v. Cressey, supra, the court upheld the ordinance as applied to defendant Jolley. The court first noted a person is not guilty of the crime by the fact he is present with knowledge the activity is occurring. "Rather,” the court said, "it is the element of participation or acting in concert with or abetting by lending approbation to the violation by one’s presence that gives the ordinance its vitality.”
In Commonwealth v. Tirella, 356 Mass 271, 249 NE2d 573 (1969), the defendant was convicted of violating a statute which punished "* * * Vhoever is in the company of a person, knowing that said person is illegally in possession of a narcotic drug * * ” The court construed this language to require more than that the defendant was found in the same place with a person known by the defendant to possess narcotics. What was required, the court said, was proof of acquiescent association and absence of prompt and adequate objection to the narcotic activity. Thus construed the court held the statute was valid as applied to Tirella who was sitting in a car with a person found to be in possession of heroin.
In each of these cases the court found it necessary to add additional elements to the plain wording of the enactment in order to uphold it.
I agree with the reasoning of the Nebraska Supreme Court in State v. Adkins, 196 Neb 76, 241 NW2d 655 (1976). The statute declared unconstitutionally overbroad provided:
"* * * 'It shall be unlawful for any person: * * * To visit or be in any room, dwelling house, vehicle, or place *[762] where [a narcotic drug] is being used [unlawfully], if the person has knowledge that such activity is occurring ****** * » 196 Neb at 77, 241 NW2d at 656.
The court held the statute as written was overbroad in that it encompassed entirely innocent behavior. The court posed a series of rhetorical questions to illustrate the broad reach of the statute:
"Could a college student be convicted under the statute if he merely continued to reside with a roommate whom he knew illegally possessed marijuana? What action would a passenger in a car take when he learns that others in the car have drugs on their persons although they are not at that time using drugs? Must the passenger demand that the others dispose of anything illegal in their pockets? How about the status of relatives, priests, or doctors attempting to discourage continued violations? What if a person were engaged in a constitutionally protected activity, such as attending a public meeting or voting, when he inadvertently discovers that another person is in possession of a controlled substance? All the above situations would appear to be covered by the express language of the statute itself, and would result in the imposition of criminal liability upon a person merely because his or her presence with knowledge that such illegal activity was taking place. We do not believe the Legislature intended to make such innocent conduct criminal, and yet by virtue of the overbreadth of the language used, as commonly understood, criminal liability might well result.” 196 Neb at 79, 241 NW2d at 657.
Although the Nebraska statute used the terms "visiting” or "being in” a place where narcotics are used, while Oregon’s statute employs the term "remaining” there is little practical difference between these prohibitions. The term remaining in ORS 167.222 is not defined and should be given its ordinary meaning which is essentially the failure to leave. If we further amplify that term to mean a person remains after having a reasonable opportunity to leave following acquisition of the requisite knowledge the conduct punished is simply the presence of the individual where criminal drug activity is taking place.
*[763] If the purpose of the statute is to prevent criminal drug promotion by removing social encouragement and approbation for drug activity the method adopted does not bear a rational relationship to that purpose. An individual who is knowingly present may have no intent to encourage or approve of the illegal drug conduct or even may be present to discourage or disapprove. Since the statute makes no distinction in purposes for remaining it potentially ensnares innocent conduct. As the United States Supreme Court said in striking down a penalty statute as overbroad:
"* * * It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrong-doers also may be caught. * * *” Fairmont Co. v. Minnesota, 274 US 1, 10, 47 S Ct 506, 71 L Ed 893, 52 ALR 163 (1927).
If the statutory purpose is to restrict an individual’s access to drugs and remove him from temptation by prohibiting remaining in the proximity of drug activity it is too broad in its sweep. Such a purpose assumes a person who knowingly remains where drugs are kept or sold will buy or use the drugs. This may very well be the result but it is equally probable a person may elect to remain with no intention or purpose to participate in drug activities. The net effect would be to punish the otherwise innocent act of remaining on the assumption that a criminal act of drug abuse may result.
If the statute were to be read as requiring proof the individual remained in furtherance and aid of the unlawful drug activity, then the statute would be unnecessary. The individual would be a principal in the criminal drug activity by operation of ORS 161.155(2) (b) or (c). To construe the statute as requiring proof of intent to foster, encourage or aid the unlawful drug activities would impose additional requirements not encompassed in the words of the act and would be a judicial amendment.
*[764] I would hold the statute insofar as it prohibits knowingly remaining in a place where narcotic or dangerous drugs are unlawfully kept or sold is unconstitutionally overbroad and the demurrer should have been allowed.

The legislative history is not as clear as the lead opinion suggests. During a discussion of criminal drug promotion by the Criminal Law Revision Commission the following occurred:
"Mr. Clark [a Commission member] opposed section 5 [ORS 167.222]. He said that if a person went to a party where someone was using drugs in another room, the person could be found guilty of criminal drug promotion under this section. Mr. Paillette replied that section 5 used the strict liability term 'knowingly’ and a person could not be found guilty unless he knew drugs were in use.” Minutes, Criminal Law Revision Commission, March 18, 1970, p 14.
The section was approved by the Commission after this discussion. The implication is the Commission understood the person would be guilty if he had knowledge the drug use was occurring in the other room. There was no discussion regarding a requirement that the dwelling’s primary or substantial purpose be drug activity.

 See also an analysis of the Cressey decision which is critical of the court’s reasoning. No Place for "Being in a Place”: The Vanishing of Health and Safety Code Section 11,556, 23 Stan L Rev 1009 (1971).