[Crim. No. 7080. Fourth Dist., Div. Two. July 14, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDY ANDERSON, Defendant and Appellant.

[black redaction bar]

[black redaction block]

[black redaction block]

## Counsel

Jerry J. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, and Cecelia H. Johnson, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

GARDNER, P. J.—After an unsuccessful motion under Penal Code, section 1538.5, defendant pleaded guilty to burglary and now attacks the court's ruling on the Penal Code, section 1538.5 motion.

Mr. Panno was the victim of a burglary. Defendant, a California Youth Authority (hereafter CYA) parolee, became a suspect. Officer Wulf talked to defendant's parole agent and was advised there was an outstanding warrant for defendant's arrest as a parole violator. A teletype copy of the warrant was given to Wulf. Wulf arrested the defendant, secured certain admissions from him and his codefendant and, armed with these admissions, recovered some of the stolen property.

[black redaction bar]

■ At the Penal Code section 1538.5 hearing, defendant contended that he had been illegally arrested, i.e., that the warrant had been issued without probable cause. Defendant's parole agent was called as a witness and presented the warrant which had been properly signed by a designee of the Director of the CYA. The warrant did not contain a supporting affidavit and when the defendant attempted to question the parole agent on the issue of probable cause, the district attorney objected on the ground that the Director of the CYA could issue such a warrant without probable cause under Welfare and Institutions Code, section 1767.3. The objection was sustained.

■ It is settled that evidence obtained as the result of an illegal arrest carries with it the taint of illegality in the absence of proof that the illegality has become attenuated. An arrest based on an arrest warrant in which the supporting affidavit does not meet the two-pronged *Aguilar* test is illegal. (*People* v. *Cressey,* 2 Cal.3d 836 [87 Cal.Rptr. 699, 471 P.2d 19]; *People* v. *Sesslin,* 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321]; *People* v. *Bilderbach,* 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921]; *In re Golia,* 16 Cal.App.3d 775 [94 Cal.Rptr. 323]; *People* v. *Thompson,* 6 Cal.App.3d 945 [86 Cal.Rptr. 327].) A conclusionary affidavit will not suffice. (*Whiteley* v. *Warden,* 401 U.S. 560, 565 [28 L.Ed.2d 306, 311, 91 S.Ct. 1031, 1035].) ■ When the defendant challenges the validity of the warrant, the burden is on the prosecution to establish its legality. (*People* v. *Burke,* 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67]; *Beckers* v. *Superior Court,* 9 Cal.App.3d 953, 957 [88 Cal.Rptr. 602].)

The Attorney General does not argue with these general principles of law pertaining to the arrest warrants but contends that a warrant issued for a CYA parolee need not meet these requirements.

It is true that a parolee is a person enjoying a conditional liberty depending upon observance of parole conditions. A judge or jury has found that he has violated a law which was promulgated by the Legislature in order that this may be, to a certain extent at least, an orderly society. Thereafter, a judge has decided that for the protection of the law-abiding element of society he must be imprisoned. That judge then handed over to the executive branch of the government the task of either keeping him imprisoned or, if afforded a conditional release, the responsibility of keeping him under such supervision and restraint that society still receives a reasonable amount of protection. The same rigid standards imposed on law enforcement agencies in their contacts with unconvicted criminals do not apply. But for parole the prisoner would

still be in prison or, in this case, the Youth Authority. By administrative fiat the parolee has been granted conditional release. It is the responsibility of the courts to support the correctional authorities in their task and not to place unnecessary restrictive limitations on their activities.

However, the old idea that the parolee had neither a constitutional nor statutory right to notice or hearing preceding revocation of parole is no longer the law. Under the prodding of both the Legislature and the courts, the correctional authorities have now established elaborate proceedings for prerevocation and revocation hearings. It is true, as the Attorney General points out, that the CYA has formulated meticulous guidelines for determining when it is desirable to return a suspected parole violator. (See Legal Sections 550, 550.1, 550.2, 551, 551.1, Youth Authority Rehabilitation Service Manual.) All of these comport completely with the principles enunciated in *Morrissey* v. *Brewer*, 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], and its progeny.[1] However, this does not answer the instant question.

■ The need to act quickly in the handling of a parolee or probationer has long been recognized and it is the rule that a warrant for the arrest of a parolee or a probationer may be issued without *notice*. (Pen. Code, § 3060; Welf. & Inst. Code, § 1767.3; *Morrissey* v. *Brewer, supra; In re Bye*, 12 Cal.3d 96 [115 Cal.Rptr. 382, 524 P.2d 854]; *People* v. *Vickers*, 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People* v. *Mason*, 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630].) However, this does not mean that a parolee may be arrested without *cause*. The Director of the Adult Authority or the Director of the Youth Authority simply cannot come into his office some morning and, without reason, order the arrest of all parolees. Parole authorities may not act capriciously, whimsically or arbitrarily. Insofar as the Adult Authority is concerned, the Legislature has recognized this in the enactment of Penal Code, section 3063, which states: "No parole shall be suspended or revoked without cause, which cause must be stated in the order suspending or revoking the parole."

Insofar as the Youth Authority is concerned, the Legislature has omitted the word "cause" in Welfare and Institutions Code, section 1767.3, which provides, in substance, that the Authority may suspend, cancel or revoke any parole without notice, may order returned to the custody of the Authority any person committed to it who is on parole,

---

[1] Defendant is entitled to the protections of *Morrissey*. (Cf. *In re Bye, supra*, 12 Cal.3d 96, 100-103.)

and that the written order of the chairman of the authority is a sufficient warrant for any peace officer to return to custody one who is on parole. While Welfare and Institutions Code, section 1767.3 does not mention "cause," Welfare and Institutions Code, section 1766 (subd. (a)(3)) does provide that the Youth Authority has the power to "Order reconfinement or renewed release under supervision *as often as conditions indicate to be desirable.*" (Italics added.)

While the Legislature used different terminology, the "cause" for the adult and "as often as conditions indicate to be desirable" for the juvenile each establish that a parolee will not be returned until a certain level of cause has been met. There is no relevant difference in the two statutes. With full recognition of the policy of the Juvenile Court Law and its need for flexibility in carrying out its nonpunitive goals of rehabilitation, treatment, training and protection, some standard must rather obviously be met before a parolee be removed from his conditional release. The Legislature has said that this may be done as often as conditions indicate a return to be desirable. Under the constitutional standards of *Morrissey* et al., this phrase must be interpreted as meaning probable cause, i.e., such a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion that the parolee has conducted himself in such a way that his condition of release should be terminated. (See *United States* ex rel. *Randazzo* v. *Follette* (2d Cir. 1969) 418 F.2d 1319, 1322.)

Before a warrant is issued for the arrest of the parolee, conditions must exist meeting this standard. If not, the warrant is an illegal warrant. ▬ In the instant case, the ward's parole officer was about to explain the issuance of the warrant when the district attorney interposed his objection.[2] The sustaining of that objection was error.

In order to test the legality of the arrest, the parole agent should have been allowed to testify as to the reason for the issuance of the warrant. The elaborate procedure noted above in the administrative manual insures that probable cause existed before the warrant was issued. However, as in this case, upon proper objection the prosecution has the responsibility of establishing this probable cause.

[2] Some attorneys seem to feel a compulsion to object every time there is a lull in the proceedings.

We would not go as far as the defendant suggests and rule that the warrant have appended to it, as an affidavit or declaration, a statement of the cause on which the warrant was issued. Since this was an administrative warrant, not a judicial warrant, if the administrator wishes to come into court and testify (as in this case) as to the cause on which the warrant was issued, principles of due process have been satisfied.

In *Abel* v. *United States* (1960) 362 U.S. 217 [4 L.Ed.2d 668, 80 S.Ct. 683], the United States Supreme Court acknowledged that there were no prior reported decisions on the purported clash of the administrative warrant and the Fourth Amendment. The court in *Abel* after indicating that the issue was not properly raised in this case, noted that "[S]tatutes authorizing administrative. . .proceedings have the sanction of time." (362 U.S. 217, 230 [4 L.Ed.2d 668, 681, 80 S.Ct. 683].)[3] Subsequently, in *United States* ex rel. *Randazzo* v. *Follette, supra,* 418 F.2d 1319, the Second Circuit upheld an administrative warrant to return a parolee to custody. The court indicated that "[w]hile the safeguards accorded under this statutory scheme are not as extensive as those required to obtain a warrant for the arrest of an ordinary citizen, they appear to us to be sufficient to provide for the lawful arrest of a parolee." (418 F.2d 1319, 1322.)[4] ■ We are also of the view that administrative warrants must be tested by the usual rules governing the issuance of warrants by judicial magistrates. (1 Antieau, Modern Constitutional Law, § 2:10, p. 164.) If administrative warrants were not subject to review as noted above, they would definitely conflict with the Fourth Amendment requirement of a timely judicial determination of probable cause. (See *Gerstein* v. *Pugh* (1975) 420 U.S. 103 [43 L.Ed.2d 54, 65, 72, 95 S.Ct. 854].)

■ Since the court erroneously refused to allow an attack on the legality of the warrant, the arrest became illegal and evidence obtained thereafter inadmissible. No contention has been made or can be made of attenuation.

[3]In *Abel,* the statute authorizing the issuance of administrative warrants of arrest provided they be issued when " '. . .it appears that the arrest of the respondent is necessary or desirable.' " (362 U.S. 217, 232 [4 L.Ed.2d 668, 682, 80 S.Ct. 683].)

[4]Even though the showing to be made to support the issuance of the warrant may in some cases be identical to that made at a prerevocation hearing, we think this showing must be made at the motion to suppress. First, section 1538.5 of the Penal Code specifically provides for such a challenge. (Pen. Code, § 1538.5(a)(2)(*i*).) Secondly, the state must establish probable cause in order to establish jurisdiction over the parolee at a preliminary hearing as opposed to a prerevocation hearing. (*In re La Croix* (1974) 12 Cal.3d 146, 154, fn. 5 [115 Cal.Rptr. 344, 524 P.2d 816].)

Matter remanded to the superior court with directions to grant defendant's motion to withdraw his plea of guilty and to conduct another Penal Code, section 1538.5 hearing in which the legality of the arrest warrant may be tested.

Kerrigan, J., and Kaufman, J., concurred.