Filed 2/24/25

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ARUTUN HARUT SHAGINYAN,<br><br>    Defendant and Respondent. | No. 24APCM00057<br><br>Clara Shortridge Foltz Criminal<br>Justice Center Trial Court<br><br>No. 8CJ00722-09<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Elizabeth Harris, Commissioner. Reversed and Remanded.

Hydee Feldstein Soto, City Attorney, City of Los Angeles, Dennis Kong, Head Deputy City Attorney, Meredith McKittrick, Assistant Head Deputy City Attorney, and John R. Prosser, Deputy City Attorney for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

\*         \*         \*

1

Defendant Arutun Harut Shaginyan was placed on misdemeanor diversion (Pen. Code, § 1001.95),[1] after being charged with commercial cannabis-related crimes (L.A. Mun. Code (LAMC), §§ 12.21.A.1, subd. (a), 104.15, subd. (b)(2)), based on his employment as a security guard at an unlicensed cannabis store. The prosecutor provided the court with a police report, indicating defendant prior to the completion of diversion violated diversion by again working at an unlicensed cannabis store, and requested the court conduct an evidentiary hearing to terminate his diversion. The court was unpersuaded that the report sufficiently established defendant was the person detained by police at the store, refused to conduct a hearing, and dismissed the case.

The People appeal the court's dismissal.[2] As discussed below, in this case of first impression as to the standard a court uses in determining whether to conduct a diversion termination hearing, we reverse.

## BACKGROUND

The complaint charging defendant, along with others, with the cannabis offenses was filed on September 14, 2018. A bench warrant was issued for defendant's arrest when he did not appear for arraignment, and after defendant came to court on August 17, 2022, the warrant was recalled, and the case was continued several times at defendant's request.

On April 17, 2023, defendant appeared, represented by counsel, and the prosecutor indicated he was not opposed to defendant being granted diversion. The prosecutor told the court that, "for a security guard with no subsequent contact, the term is 12 months, no commercial cannabis activity, 40 hours community service. Obey all laws." After being informed of the terms of diversion, defendant indicated he understood and accepted them. The court told defendant that, if he complied with the conditions, the case would be dismissed in a year.

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

[2] This court has jurisdiction to consider the appeal, because under section 1466, subdivision (a)(2), the dismissal was "an order . . . dismissing . . . the action . . . entered before the defendant has been placed in jeopardy."

2

The court continued the case for progress towards the community service requirement, and on July 26, 2023, defendant provided the court with proof he completed community service. The court reminded defendant, "What you have agreed to is that you will not be involved in commercial cannabis activity, and you will obey all laws," and it continued the case to the April 17, 2024, one-year completion date.

When the case was called on April 17, 2024, the prosecutor informed the court he "received a police report in which the defendant was a security guard at another commercial cannabis location that was unlicensed. He had a BB gun. And this was on 2/23/24. We're in the middle of filing it." The court stated a police report "does not . . . constitute a violation of the obey all laws [condition of diversion]." The prosecutor asked the court to schedule a hearing so he could prove defendant violated the terms of diversion, and asked for the hearing to be conducted in two weeks so witnesses could be subpoenaed. The court calendared the matter in two days, informing the prosecutor that, at that time, it would decide whether an evidentiary hearing would be conducted.

On April 18, 2024, the prosecutor filed a petition to terminate diversion, arguing the court should schedule a hearing and allow the presentation of evidence to determine whether diversion should be terminated. The prosecutor attached the police report pertaining to the February 23, 2024 incident, along with laboratory reports indicating cannabis was seized by the police, and other related documents.

The report indicated a search warrant was issued for a cannabis storefront sales operation on 6620 South Crenshaw Boulevard in the City of Los Angeles, and the warrant was executed on February 23, 2024. Two persons were detained when the police entered at 12:15 p.m., a female Hispanic, "Suspect-1," whose name was redacted in the report and other documents given to the court, and a person identified as, "Suspect-2 Shaginyan, Harut DOB: 04/18/1981." The officer who wrote the report stated he saw numerous jars of cannabis and other cannabis products in display cases in a sales room, and "Suspect-1," after waiving her

3

*Miranda*[3] rights, said "she had been working at the dispensary for a few weeks[] as a counter clerk (commonly known as a budista)." The report further stated, "While at [the] scene, I read Suspect-2 (Shaginyan, Harut) his *Miranda* [r]ights," and after he waived his rights, "Shaginyan stated that he worked at the dispensary as a security guard, but would not disclose for how long. He stated that he was only armed with a BB gun for 'show.'" The report stated, "Based on the statement Suspect-1 and Suspect-2 made that they were worked [*sic*] professionally at the location, I discovered that they were in violation of 104.15(B)(2) LAMC: Establish / operate or participate as an employee, contractor, agent, or volunteer, in an unlicensed commercial cannabis activity in the city. Suspects 1-2 were issued citations and released at scene."[4]

The court called the matter on April 19, 2024, and the prosecutor stated a new case had been filed against defendant based on the February 23, 2024 incident. The prosecutor indicated that, although "the mere filing of a case is not dispositive," the court should conduct a hearing to decide if defendant failed to comply with his diversion terms. The court responded the "threshold" for conducting a hearing had not been reached, because "you've not given me anything that says that the defendant was present." The prosecutor pointed out the person detained by the police had the same name and date of birth as defendant, but the court noted no citation with defendant's name was provided. The court determined the prosecutor did not satisfy his burden for requiring an evidentiary hearing, because, "The information given to this court was that the citation was to some female." The court concluded, "If [defendant] was present, he should have had a citation and he should have signed it. And I think that's what you were alleging, but it's not shown to this court, so no hearing is necessary. No showing that the defendant was present at the location." The court denied the prosecutor's diversion termination petition, and dismissed the case pursuant to the diversion statute (§ 1001.95).

---

[3]*Miranda v. Arizona* (1966) 384 U.S. 436.

[4]A copy of only one citation was attached, and it pertained to the female Hispanic whose name and other identifying information were redacted.

DISCUSSION

The case turns on whether the showing made by the prosecutor was sufficient for the court to allow the People an opportunity to present evidence at a hearing as to whether diversion should be terminated. Because the issue pertains to statutory interpretation, we employ de novo review. (*People v. Braden* (2023) 14 Cal.5th 791, 804; *People v. Lofchie* (2014) 229 Cal.App.4th 240, 250.) De novo review as to whether the court correctly refused to set the case for an evidentiary hearing is also appropriate, because the court made its determination based on the sufficiency of the police report attached to the prosecutor's petition to terminate probation, with no credibility determinations having been made. (See *People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 7 [legal conclusion based on undisputed facts is reviewed de novo]; *People v. Watson* (1981) 30 Cal.3d 290, 300 ["determination, based upon undisputed facts, constituted a legal conclusion which is subject to independent review on appeal"]; *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1021 [de novo review found appropriate because, "[h]ere, the trial court did not take testimony. There is no credibility of witnesses to determine. It considered the court record that we review"].) We conclude a satisfactory showing was made, and the court erred in finding otherwise and refusing to conduct an evidentiary hearing.

"Our primary objective in interpreting a statute is to determine and give effect to the underlying legislative intent. [Citation.] Intent is determined foremost by the plain meaning of the statutory language. If the language is clear and unambiguous, there is no need for judicial construction. When the language is reasonably susceptible of more than one meaning, it is proper to examine a variety of extrinsic aids in an effort to discern the intended meaning. We may consider, for example, the statutory scheme, the apparent purposes underlying the statute and the presence (or absence) of instructive legislative history. [Citation.]" (*City of Brentwood v. Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 722; see also *Schelb v. Stein* (2010) 190 Cal.App.4th 1440, 1448 ["'When interpreting a statute, we endeavor to harmonize it with other enactments to the extent possible'"].)

<u>Statutory Provisions</u>

Effective January 1, 2021, section 1001.95 "gives judges discretion to offer diversion to misdemeanor defendants." (*Islas v. Appellate Division of Superior Court* (2022) 78 Cal.App.5th 1104, 1107.) Section 1001.95 provides, in relevant part, as follows.

> (a) A judge in the superior court in which a misdemeanor is being prosecuted may, at the judge's discretion, and over the objection of a prosecuting attorney, offer diversion to a defendant pursuant to these provisions.

> (b) A judge may continue a diverted case for a period not to exceed 24 months and order the defendant to comply with terms, conditions, or programs that the judge deems appropriate based on the defendant's specific situation.

> (c) If the defendant has complied with the imposed terms and conditions, at the end of the period of diversion, the judge shall dismiss the action against the defendant.

> (d) If it appears to the court that the defendant is not complying with the terms and conditions of diversion, after notice to the defendant, the court shall hold a hearing to determine whether the criminal proceedings should be reinstituted. If the court finds that the defendant has not complied with the terms and conditions of diversion, the court may end the diversion and order resumption of the criminal proceedings.

Section 1001.96 states, in pertinent part, "A defendant who is diverted pursuant to this chapter shall be required to complete all of the following in order to have their action dismissed: [¶] (a) Complete all conditions ordered by the court."[5] We further note section 1001.95, subdivision (d), sets forth a two-step process to terminate diversion and reinstitute criminal proceedings: (1) "If it appears to the court that the defendant is not complying with the terms and conditions of diversion," (2) "after notice to the defendant, the court shall hold a hearing."

---

[5]The statute further provides diversion cannot be granted for specified crimes (§ 1001.95, subd. (e)), with commercial cannabis offenses not being listed. Section 1001.97 provides that, when a defendant successfully completes the court's terms and conditions and any programs ordered as part of diversion, the defendant's arrest is deemed to have never occurred, but the defendant must nonetheless disclose the arrest in response to a question in a questionnaire or application for a position as a peace officer.

Use of the term "shall" demonstrates an intent that, if the first step is satisfied and the defendant is provided notice, the court must conduct a diversion termination hearing at the People's request. (*Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 823 ["Generally the term 'shall' connotes the provision is mandatory"].) In contrast to the specificity of section 1001.95, subdivision (a), which indicates a court's decision whether to grant diversion is left "at the judge's discretion," and of section 1001.95, subdivision (d), which states "the court shall hold a hearing" when the court has reason to believe the defendant is not complying with conditions of diversion, the statute does not state what showing is sufficient for the court to proceed to step two and conduct the diversion termination hearing.

The legislative history of the bill that enacted the statute (Assem. Bill No. 3234 (2019-2020 Reg. Sess.)) (AB 3234) is opaque on the issue. Three legislative committees analyzed the bill, and none commented on the scope of the diversion termination procedures. (See Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 3234 (2019-2020 Reg. Sess.) as amended Aug. 3, 2020; Assem. Bill No. 3234 (2019-2020 Reg. Sess.) as amended Aug. 24, 2020; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3234 (2019-2020 Reg. Sess.) as amended Aug. 24, 2020.)

While considering AB 3234, the Legislature was informed the misdemeanor diversion statute was based on the Los Angeles Deferral of Sentencing Pilot Program (former § 1001.94 et. seq.), which was in effect from 2015 to 2018. The prior statute, like section 1001.95, gave courts power to grant diversion to defendants charged with misdemeanors--with some offenses being excluded--and indicated diversion could be terminated, "If, during the period of deferral imposed pursuant to subdivision (a) of Section 1001.94, the defendant reoffends or fails to comply with the terms, conditions, or programs required by the court, then the court, the probation officer, or the prosecuting attorney shall make a motion for entry of judgment, and the court shall sentence the defendant as if deferral had not occurred." (former § 1001.97.) The former law did not specify the standard a court uses in ruling on a "motion for entry of judgment," and the legislative committees that analyzed the bill that enacted the pilot program did not comment on the termination provision.

<u>Other Statutory Schemes</u>

We presume the Legislature is aware of existing statutory law when it enacts a statute. (*Christians v. Chester* (1990) 218 Cal.App.3d 273, 276; *People v. Hadim* (2022) 82 Cal.App.5th Supp. 39, 47, fn. 3.) Also, we presume the Legislature is cognizant of appellate court decisions when a law is adopted. (*City and County of San Francisco v. Strahlendorf* (1992) 7 Cal.App.4th 1911, 1915; *People v. Onesra Enterprises, Inc.* (2018) 24 Cal.App.5th Supp. 9, 20.) Accordingly, we look for guidance to comparable statutes and procedures in place when section 1001.95 was enacted. (See *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1253 ["A principle of statutory construction states the Legislature is deemed to be aware of existing statutes and judicial decisions when it adopts a statute. [Citation.] Under this principle, we consider . . . statutes and case law in place . . . when the [law being interpreted] was enacted"].)

The law concerning termination of military diversion uses nearly the same language as the misdemeanor diversion two-step inquiry, without setting forth the standard guiding the court in the step-one inquiry. (§ 1001.80, subd. (c) [now subd. (e)] ["If it appears to the court that the defendant is performing unsatisfactorily in the assigned program, or that the defendant is not benefiting from the treatment and services provided under the diversion program, after notice to the defendant, the court shall hold a hearing to determine whether the criminal proceedings should be reinstituted"].) The drug offense diversion statute, with regard to termination proceedings, employs similar language, also without elucidating the standard to be used in step-one proceedings. (§ 1000.3 ["(a) If it appears to the prosecuting attorney, the court, or the probation department that the defendant is performing unsatisfactorily in the assigned program, that the defendant is convicted of an offense that reflects the defendant's propensity for violence, or that the defendant is convicted of a felony, the prosecuting attorney, the court on its own, or the probation department may make a motion for termination from

pretrial diversion.  [¶] (b) After notice to the defendant, the court shall hold a hearing to determine whether pretrial diversion shall be terminated"].)[6]

More useful in our analysis is a comparison of diversion termination with the revocation of probation statute (§ 1203.2) and opinions implementing it.  Probation is "the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community . . . .  [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 380.)  Probation conditions "are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large.  [Citation.]" (*Griffin v. Wisconsin* (1987) 483 U.S. 868, 875; see *People v. Chandler* (1988) 203 Cal.App.3d 782, 788 [probation is "designed to allow rehabilitation"].)  Diversion is similar to probation in that it constitutes "the procedure of postponing prosecution of an offense . . . either temporarily or permanently at any point in the judicial process from the point at which the accused is charged until adjudication [citations]," pending satisfactory performance with a court's conditions. (*Gresher v. Anderson* (2005) 127 Cal.App.4th 88, 111.)

Diversion can be "viewed as a specialized form of probation, available to a different class of defendants but sharing many similarities with general probation . . . ." (*People v. Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 66 [construing a prior version of the drug diversion statute]; see also *People v. Mazurette* (2001) 24 Cal.4th 789, 796 ["a grant of probation and a deferred entry of judgment pursuant to [predecessor to drug diversion statute] have many similarities"]; *People v. Cisneros* (2000) 84 Cal.App.4th 352, 358 [same].)  Both probation and diversion are "intended to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform . . . ." (*People v. Superior Court* (*On Tai Ho*), *supra*, 11 Cal.3d at p. 66.)  Additionally, the probation revocation process functions basically in the same manner as the diversion revocation process.  (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 348 [a court at a probation termination hearing decides "whether a

---

[6]Interpreting an earlier version of the drug diversion statute, *Kramer v. Municipal Court* (1975) 49 Cal.App.3d 418, 424, held that a defendant on diversion has the right to a hearing prior to diversion being terminated, but did not discuss the standard a court uses in revoking diversion pending a hearing.

violation of the terms of probation has occurred and, if so, whether it would be appropriate to allow the probationer to continue to retain [the probationer's] conditional liberty"]; *People v. Borja* (1980) 110 Cal.App.3d 378, 382 ["If the defendant accepts probation and later violates any of the conditions thereof, the court may then revoke its order of probation"].)

Section 1203.2, subdivision (a), provides, "At any time during the period of supervision of a person . . . released on . . . probation . . .," the court "may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for such offenses." Following an initial determination that a person has violated probation, the person is entitled to a hearing to elucidate the facts underlying the violation. (§ 1203.2, subd. (b).)

The California Supreme Court explained, "Under section 1203.2, the court is authorized to summarily revoke a defendant's probation "'if the interests of justice so require and the court . . . has reason to believe from the report of the probation officer or otherwise" that grounds for revocation exist. (§ 1203.2, subd. (a).) Such summary revocation gives the court jurisdiction over and physical custody of the defendant and is proper if the defendant is accorded a subsequent formal hearing in conformance with due process. [Citation.] [¶] Therefore, after the summary revocation, the defendant is entitled to formal proceedings for probation revocation. The purpose of the formal proceedings is . . . to give the defendant an opportunity to require the prosecution to prove the alleged violation occurred and justifies revocation. [Citation.]' [Citation.]" (*People v. Leiva* (2013) 56 Cal.4th 498, 504-505.)

Section 1203.2 does not specify the standard used by a court in deciding whether it "has reason to believe" a violation occurred, allowing it to proceed to step two in the probation revocation and termination process. (See *People v. Arreola* (1994) 7 Cal.4th 1144, 1152 [observing section 1203.2 "prescribes few procedural guidelines governing probation revocation proceedings"].) In *People v. Vickers* (1972) 8 Cal.3d 451, 456 (*Vickers*), the California Supreme Court held that, to comport with due process, the statute contemplates an

10

initial inquiry as to whether there is probable cause to believe a violation occurred, followed by an evidentiary termination hearing if probable cause is found. In doing so, *Vickers* relied on the United States Supreme Court's discussion of the two-step process used in parole revocation procedures in *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*). (*Vickers*, *supra*, 8 Cal.3d at p. 456.) *Morrissey* held due process affords parolees the right to two hearings during a revocation proceeding. At the first hearing, the court must conduct "some minimal inquiry" to establish that probable cause exists to believe a parole violation occurred. (*Morrissey*, *supra*, 408 U.S. at pp. 485-487.) At the second hearing, the parolee receives notice of the claimed violations, and an evidentiary hearing is conducted. (*Id*. at pp. 487-489.)

A prosecutor must prove the grounds for revocation of probation at an evidentiary hearing by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447; *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.) However, the lesser standard of "reason to believe" (§ 1203.2, subd. (a)) or probable cause (*Vickers*, *supra*, 8 Cal.3d at p. 456; *Morrissey*, *supra*, 408 U.S. at pp. 485-487) is all that is required to summarily revoke probation pending a hearing. (See *Depper v. Superior Court* (1999) 74 Cal.App.4th 15, 21 [summary revocation of probation held not to bar the filing of a Code Civ. Proc., § 170.6 disqualification affidavit, because, "[t]he summary revocation of probation . . . did not involve a determination of disputed facts; it was instead a finding that there was probable cause to support revocation. [Citations.] The merits of the revocation petition were to be determined at [a subsequent] hearing"]; *People v. Gifford* (1974) 38 Cal.App.3d 89, 91 ["The two-stage hearings required under *Morrissey* and *Vickers* are designed to insure that a person who has been granted conditional release from a penal institution shall not be deprived of that liberty without a hearing and that he shall not be detained pending such a hearing for an undue time without at least some preliminary inquiry into the grounds for his reincarceration"].)

Probable cause is "a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion that the [person] has conducted himself in such a way that his condition of release should be terminated. [Citation.]" (*People v. Anderson* (1975) 49 Cal.App.3d 869, 874; *In re Frias* (1973) 34 Cal.App.3d 88, 92.)

Probable cause is "a level of proof below that of proof beyond a reasonable doubt, or even proof by a preponderance of the evidence." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1188-1189.) "'"Reasonable and probable cause' may exist although there may be some room for doubt."' [Citations.]" (*People v. Mower* (2002) 28 Cal.4th 457, 473.)

Application in Diversion Termination Context

We find the probation revocation framework useful in analyzing the misdemeanor diversion statute. We presume the Legislature, cognizant of the probation revocation statute and caselaw interpreting it, intended the two-step process in section 1001.95, subdivision (d), to function the same way.

We interpret the language used for a court to decide if a hearing is required in the diversion statute (§ 1001.95, subd. (d) [i.e., "If it appears to the court that the defendant is not complying with the terms and conditions of diversion"]) to be comparable to the statute governing revocation of probation (§ 1203.2, subd. (a) [i.e., "the court has reason to believe . . . that the person has violated any of the conditions of their supervision"]). As with the opinions examining the revocation of probation statute (*Vickers*, etc.), we view the requirements of due process to be satisfied by use of a two-step procedure in the diversion termination context, with probable cause of a violation being required to proceed to an evidentiary hearing. As in the milieu of terminating probation, a defendant's right to remain on diversion without interruption is respected by the requirement that a court must find there is probable cause to believe the defendant has violated the terms of diversion prior to proceeding to a revocation hearing.

A full opportunity to examine whether diversion should end is provided to both a defendant and the People (see Cal. Const., art. I, § 29 ["In a criminal case, the [P]eople of the State of California have the right to due process of law"]) at a formal revocation hearing. Furthermore, as with step one of the probation revocation process, proof of violation of diversion, sufficient to revoke diversion pending a hearing, may be based on the contents of a police report. (See *In re Thomas* (1972) 27 Cal.App.3d 31, 35 [police report containing the statement of an eyewitness to a crime held to be sufficient to revoke probation under § 1203.2, subd. (b)]; accord, *People v. Santellanes* (1989) 216 Cal.App.3d 998, 1003, fn. 4; cf. *Vickers*,

12

*supra*, 8 Cal.3d at pp. 460-461 [summary revocation of probation may be based upon a probation officer's report]; *People v. Hawkins* (1975) 44 Cal.App.3d 958, 966 [proper to summarily revoke probation pending a hearing based on information supplied by a probation officer].)

The Standards Applied to Defendant's Case

We find an ample showing was made to the trial court by the prosecutor that there were reasons to believe defendant violated the conditions of his diversion, thereby requiring the court to afford the People an opportunity to prove the allegation in an evidentiary hearing.

When the court granted diversion on April 17, 2023, defendant was informed conditions included that he was to engage in no commercial cannabis activity and he had to obey all laws, and when he returned for a progress report on July 26, 2023, the court reminded defendant, "[W]hat you have agreed to is that you will not be involved in commercial cannabis activity, and you will obey all laws."

The prosecutor on April 17, 2024, told the court defendant had disobeyed the conditions of diversion, as he was found working as a security guard on February 23, 2024, at an unlicensed cannabis store. (See LAMC, § 104.15, subd. (b) [making it "unlawful to: [¶] . . . [¶] 2. Participate as an Employee, contractor, agent or volunteer or in any other capacity in an Unlawful [cannabis] Establishment"].) The police report given to the court on April 18, 2024, stated the male that was detained told police he was employed at the cannabis shop as a security guard, and he was armed with a BB gun for "show."

The court erred in determining an insufficient showing was made to allow the prosecutor to present evidence of a violation of diversion. It was possible the male in the police report may have been someone other than defendant, and including with the report a citation signed by the detained male (like the citation provided for the detained female), providing descriptive information, could have supplied additional proof to believe defendant was the detained person. Yet, given the report listed a person with defendant's same name and date of birth as having been found at the location, this was sufficient for it to "appear[] to the court that the defendant is not complying with the terms and conditions of diversion" and for the existence of "a strong

13

suspicion" that diversion should be revoked pending a hearing. (See *People v. Anderson*, *supra*, 49 Cal.App.3d at p. 874; *In re Frias*, *supra*, 34 Cal.App.3d at p. 92.)

## DISPOSITION

The order dismissing defendant's case is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
Ricciardulli, J.

We concur:

_____   _____
P. McKay, P. J.        Guillemet, J.